IN THE UNITED STATE DISTRICT COURT
FOR THE DISTRICT OF KANSAS
(WICHITA DOCKET)

| | | |
|---|---|---|
| THE UNITED STATES OF AMERICA, | ) | |
| | ) | |
| Plaintiff, | ) | Case No. 6:21-cr-10073-EFM |
| v. | ) | |
| | ) | |
| MICHAEL R. CAPPS, | ) | |
| | ) | |
| Defendant, | ) | |
| | ) | |

### REPLY RE: STAY OF RESTITUTION PENDING APPEAL

Michael Capps, through counsel, respectfully submits the following reply to the government's response to his motion for a stay of the restitution order pending disposition of his appeal pursuant to Rule 38(e) of the Federal Rules of Criminal Procedure.

**Argument**

**I.    Mr. Capps does not have any, let alone a half of a million dollars in, hidden assets.**

The government's response alleges that Mr. Capps has squirreled away over half a million dollars in liquid assets derived from a wrongful death settlement and his mother's estate. He hasn't.

This money was largely spent on legal fees related to the instant offense,[1] financing Mr. Capps' businesses, paying down debt, and failed investments in cryptocurrency. As Mr. Capps has recently re-affirmed to the government, his financial situation depicted in the Presentence Investigation Report was accurate, and it has not materially changed since. Mr. Capps has also

---

[1] Although Mr. Capps is now indigent and therefore qualifies for representation by the federal public defender's office for matters related to his direct appeal, he previously retained counsel in district court, including for trial and sentencing. Mr. Capps has been representing himself pro se in other matters in district court.

filed a CJA-23 financial affidavit (ECF No. 110), which was certified under penalty of perjury and did not include any significant sums of cash. In light of these representations, the government's suspicion that Mr. Capps' has exorbitant sums of hidden assets is purely speculative and should not figure into this Court's analysis.[2]

## II. On balance, the *Nken* factors support this Court's discretion to grant a stay of the restitution order pending appeal.

The government agrees that Rule 38(e) gives this Court discretion to grant a stay of the restitution order. At least implicitly, it agrees that the *Nken* factors are instructive, and it asserts that Mr. Capps cannot satisfy them. However, on balance, the *Nken* factors support granting a stay of the restitution order in this case. *See United States v. Razzouk*, No. 11-cr-430, 2018 WL 3574868 (E.D.N.Y. July 25, 2018) (granting stay where defendant showed likelihood of success on appeal, though he failed to meet second, third, and fourth factors); *Yalincak*, 2015 WL 6456537, at *3 (granting stay under Rule 38(e) where defendant could not show likelihood of success on appeal, but demonstrated financial harm); *United States v. O'Brien*, No. 17-cr-239, 2023 WL 3652624 (N.D. Ill. May 25, 2023) (same).

### A. Mr. Capps is likely to succeed on appeal.

For the reasons explained in his motion and the there-attached appellate briefing, Mr. Capps is reasonably likely to succeed on appeal, which would result in a vacating of the restitution order. Although the government of course disagrees in its response, the merits of the appeal need not be further discussed here.

---

[2] To the extent that the Court's decision to grant or deny the stay motion does turn on the existence of the alleged hidden assets, and this Court is not wholly satisfied with Mr. Capps' representations in the PSR, the financial affidavit, and herein, Mr. Capps would be willing to provide a more detailed accounting.

However, the government also submits that even if Mr. Capps wins on appeal, this factor still favors the government because it is likely to secure convictions upon retrial. Its position is problematic for several reasons. First, it cites no authority for its proposition that this Court should look beyond the likelihood of success on appeal and require the movant to prove a likelihood of success on the merits of a potential retrial. In any event, success on appeal would necessarily entail a finding by the Tenth Circuit that the error was prejudicial—in other words, that there is a reasonable probability of a different outcome on remand. Moreover, the government ignores that success on appeal means that the restitution order would be vacated and any amount paid would be returned to Mr. Capps—not maintained by the government pending retrial. And finally, the government's assumption that it would again obtain convictions is purely speculative. Indeed, the previous jury rendered a split verdict, finding Mr. Capps not guilty of multiple counts.

Accordingly, for the reasons discussed in Mr. Capps' motion and in the briefing on appeal, Mr. Capps is likely to succeed on the merits of the appeal, and this factor weighs in favor of granting the stay.

**B. Harm to Mr. Capps**

In its response, the government asserts that Mr. Capps' fixed income is more than enough for a person to get by month to month. Even assuming that's true, the government's apparent assumption that one can only be harmed under this factor if they will fall into abject poverty is flawed, and it provides no legal support for imposing such a high burden on a movant. For the reasons explained in the motion, Mr. Capps will suffer economic harm if the government continues to garnish 15% of his SSDI and seizes the proceeds of the sale of his family home, about $25,000 of which he was set to receive.

The government goes on to bizarrely criticize Mr. Capps for financially supporting his son. To be sure, as the government points out, Mr. Capps is not legally obligated to do so—perhaps he is only morally obligated to do so. But the government offers no authority or explanation why only legal obligations can be considered in determining whether a movant will suffer harm absent a stay. The government's criticism is even more dubious given that the stated reason Mr. Capps would have to support his son is because the government is seeking to withhold from him the roughly $50,000 he earned through his work renovating the family home.

Finally, the government claims that Mr. Capps is to blame for his negative net worth and negative cash flow because he makes poor financial decisions. While Mr. Capps strongly disagrees with that characterization, it is also irrelevant. That is, regardless of the cause, Mr. Capps has massive amounts of debt that he owes and has to consistently pay down as part of his monthly expenses. Garnishing 15% of Mr. Capps' SSDI and all $25,000 of the proceeds of the sale of his house hinders his ability to do that. The government seems to suggest that Mr. Capps can ignore these debts because those creditors cannot garnish his VA disability and SSDI. But ignoring them doesn't make them go away. Rather, it will put him into an even deeper hole that will be even more difficult to crawl out of. That amounts to irreparable economic harm Mr. Capps will suffer if the Court does not grant a stay.

**III.    Issuance of the stay will not substantially injure any party.**

The government all but concedes that the actual victims will not suffer any harm if this Court grants a stay. *See* Response at 9 (acknowledging that a stay is "unlikely to impact the [victims'] operating budgets"). Instead, it launches ad hominem attacks, claiming that Mr. Capps will attempt to hide money overseas or needlessly waste the money rather than pay restitution. And it claims that over $200 billion in EIDL and PPP funds were distributed to potentially

4

fraudulent actors. Of course, *Mr. Capps*' offense was not a $200 billion fraud. The government's obfuscation is telling. The reality is, no party will be perceptibly harmed if this Court stays the restitution order. Because that is what this factor is concerned with, it supports granting a stay.

### IV.     The public interest favors granting a stay.

Finally, the government relies solely on the existence of the Crime Victims' Rights Act to assert that the public interest necessarily favors the victims. However, the existence of Rule 38(e), which expressly authorizes district courts to stay an order of restitution, refutes that the public interest necessarily lies with the victims. Indeed, the public is often presumed to care about defendants' rights. *Cf. United States v. Sabillon-Umana*, 772 F.3d 1328, 1333 (10th Cir. 2014). Thus, it is reasonable to believe the public would favor granting a stay where, as here, there is a substantial likelihood the restitution order is vacated on appeal, the defendant is likely to suffer harm if the stay is not granted, and the victims will suffer no perceptible harm if it is not.

Accordingly, this factor, like the first three, weighs in favor of staying the restitution order.

**Conclusion**

This Court should exercise its discretion to grant Mr. Capps a stay of the restitution order pending appeal pursuant to Rule 38(e).

Respectfully submitted,

VIRGINIA L. GRADY
Federal Public Defender


/s/ *Jacob Rasch-Chabot*
Jacob Rasch-Chabot, CA Bar #295705
Assistant Federal Public Defender
633 Seventeenth Street, Suite 1000
Denver, CO 80202
(303) 294-7002
Email: Jacob_Rasch-Chabot@fd.org
*Counsel for Defendant Michael Capps*


**CERTIFICATE OF SERVICE**

The undersigned certifies that on April 29, 2024, the above and foregoing was filed utilizing this Court's ECF System and that a copy was served via this Court's system for electronic distribution on all counsel and parties of record.

/s/ *Jacob Rasch-Chabot*
Jacob Rasch-Chabot, CA Bar #295705